IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

CHERYL F. COHENS,                           *

    Plaintiff,                          *

       v.                              *          CIVIL NO.: WDQ-11-3419

STATE OF MARYLAND DEPARTMENT                *
OF HUMAN RESOURCES, *et al.,*

    Defendants.                         *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

MEMORANDUM OPINION

Cheryl F. Cohens[1] sued the Maryland Department of Human Resources (the "DHR")[2] for employment discrimination, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"),[3] the Equal Pay Act of 1963 (the "EPA"),[4] the Maryland Equal Pay Act (the "MEPA"),[5] and Title 20 of the State Government Article of the Maryland Code ("Title 20")[6]. Pending are Cohens's motion for reconsideration of the Court's order

---

[1] Cohens was initially represented by counsel, but has proceeded *pro se* since August 9, 2012. ECF Nos. 20, 21.

[2] Cohens also sued the Baltimore City Department of Social Services, which is part of the DHR. *See* ECF No. 6-1 at 1 n.1; *see also* Md. Code Ann., Hum. Servs. §§ 2-301, 3-201.

[3] 42 U.S.C. §§ 2000e, *et seq.*

[4] 29 U.S.C. § 206(d).

[5] Md. Code Ann., Lab. & Empl. §§ 3-301, *et seq.*

[6] Md. Code Ann., State Gov't §§ 20-601, *et seq.*

dismissing her retaliation claim; the parties' cross motions for summary judgment; and Cohens's motion to amend the memorandum in support of her summary judgment motion.[7] For the following reasons, Cohens's motion for reconsideration will be granted in part and denied in part; Cohens's motion to amend will be granted; Cohens's motion for summary judgment will be denied; and the DHR's cross motion for summary judgment will be granted.

I. Background[8]

Cohens, an African-American woman, was hired as an Administrative Officer II at the DHR on November 4, 1993. Compl. ¶ 6. On November 30, 1994, she was promoted to Administrative Officer III, Grade 15, Step 11. Id.; see McMahan Decl. at 24 ¶ 10.[9] On July 27, 2005, Frank Valenti, a white man, hired Cohens to work in the DHR's training unit ("HRDT"). McMahan Decl. at 24 ¶ 9.[10]

---

[7] Cohens has also moved "for obstruction of justice and proceedings" (ECF No. 42); and the DHR has moved for summary judgment on Cohens's remaining claims (ECF No. 45). The Court will reserve ruling on these motions.

[8] On cross motions for summary judgment, "each motion [is] considered individually, and the facts relevant to each [are] viewed in the light most favorable to the non-movant." Mellen v. Bunting, 327 F.3d 355, 363 (4th Cir. 2003).

[9] "McMahan" is Jennifer McMahan, Director of HRDT. McMahan Decl. at 22 ¶¶ 2-3.

[10] Cohens retained the same classification, salary grade, and step when she was assigned to HRDT. McMahan Decl. at 24 ¶ 10. According to McMahan, "[i]t is an established practice that[,]

Three male trainers and another female trainer worked in HRDT. *See* McMahan Decl. at 22-24 ¶¶ 5-8; ECF No. 28 at 2. The other members of HRDT were Doctor Marian Davis-Foster, an African-American woman; Osceola Edmondson, an African-American man; Ron Forbes, a white man; and Barry Simon, a white man. McMahan Decl. at 22-24 ¶¶ 5-8.[11] Edmondson possesses a bachelor of science in business and a masters in public administration;[12] Forbes possesses a bachelor of science and a masters in education;[13] and Simon possesses a bachelor of science in

---

when [an employee is] reassigned and transferred to another agency, [she] retains the same [position identification number, or "PIN"], same pay grade[,] and [same] step even if the new position's appropriate classification was at a lower level." *Id.* at 24-25 ¶ 13. Cohens's duties and responsibilities also did not change during her tenure at HRDT, and were "consistent with the position specifications for an Administrative Officer III." *Id.* at 24 ¶ 10.

[11] According to the members' respective MS-22 Position Descriptions, Edmondson was an "Administrator V," with the working title of "Deputy Director--HRDT-Training Unit"; Forbes was a "Program Manager II," with the working title of "Leadership Development Program Admin., HRDT-Training Unit"; and Simon was an "Administrator II," with the working title of "E-Learning Coordinator." ECF No. 27 at 37, 45, 53.

[12] Edmondson has taught business courses at Howard Community College. McMahan Decl. at 23 ¶ 6. As of August 30, 2012, Edmondson had worked for the State of Maryland for 23 years. *Id.*

[13] Forbes also has certificates in management in the "Public Service System" and "General Public Procurement," and has taught at Essex Community College and McDaniel College. McMahan Decl. at 23 ¶ 7. As of August 30, 2012, Forbes had worked for the State of Maryland for more than 35 years. *Id.*

business administration[14].   *Id.* ¶¶ 6-8.   Cohens did not obtain a college degree.   *See* Cohens Dep. at 61 (31:14-17, 32:6-9). Cohens testified she "didn't know" whether the other HRDT members had received more training than her, but believed that she had more experience than them in "some areas."   *Id.* at 61 (31:18-21, 32:9-12).[15]

For the next four years, Cohens was denied pay increases and remained an Administrative Officer III.   Compl. ¶ 7.   In her complaint, Cohens alleges various discriminatory actions were taken against her during this time, by Valenti and others.   *See id.* ¶¶ 8-9, 25-26.

In March 2009, HRDT employees received an email stating each person's pay.   Compl. ¶ 8.   Cohens learned that she was being paid between $25,000 and $30,000 less per year than the white or male trainers.   *Id.*[16]   She "expressed her disappointment

[14] Simon is also a "Dale Carnegie Certified Instructor" in three courses.   McMahan Decl. at 24 ¶ 8.   As of August 30, 2012, Simon had worked for the State of Maryland for 35 years.   *Id.*

[15] In response to interrogatories, the DHR asserted that "all the employees within the HRDT Training Unit had duties similar to Ms. Cohens, including the responsibility to conduct trainings," but noted that "each of the other employees . . . had additional education, skills, training, and experience than [sic] Ms. Cohens and was therefore assigned work according to those skills, experience, and training."   ECF No. 28-4 at 1 (Interrog. No. 14).

[16] As of September 2009, Edmondson was a Grade 20, Step 18, and paid $79,818; Forbes was a Grade 20, Step 17, and paid $78,325;

and concerns of discrimination and pay disparity with Valenti,"
but her pay remained the same "and nothing changed around the
office."  *Id.* ¶ 9.  Thereafter, Cohens "felt that Valenti began
trying to stifle her growth and retaliate against her."  *Id.* ¶
10.  For instance, Valenti refused to allow Cohens to be the
keynote speaker for an event, despite the organizers' request
that Cohens speak.  *Id.*  Valenti recommended a male speaker.
*Id.*

Sometime before July 2009, Cohens "broke down in tears in
Valenti's office" and told him that the work environment was
"difficult" for her.  Compl. ¶ 11; *see* ECF No. 10-1 at 4 n.6.
Cohens's coworkers knew that she was terrified of mice, and
"[s]omeone [had] put mousetraps in her office."  Compl. ¶ 11.
Cohens's training schedule had also been reduced.  *Id.*  Cohens
told Valenti that she "needed to take a leave of absence because
of her mental state regarding work depression."  *Id.*  Valenti
allegedly told Cohens "she had to be a good girl" to get her
leave approved, and "someone in [m]anagement was trying to
terminate her."  *Id.*

On July 11, 2009, Cohens submitted a letter of resignation,
effective September 29, 2009.  Compl. ¶ 12; *see* ECF No. 27 at
21.  On December 15, 2009, Cohens submitted an intake

---

and Simon was a Grade 17, Step 16, and paid $63,226.  McMahan
Decl. at 23 ¶¶ 6-8.

questionnaire to the U.S. Equal Employment Opportunity
Commission (the "EEOC"), alleging race and sex discrimination
and retaliation.  ECF No. 15-2 at 3.  On March 2, 2010, Cohens
filed a charge with the Maryland Commission on Human Relations
(the "MCHR") and the EEOC, alleging race and sex discrimination
and unequal pay.  ECF No. 27 at 26 [hereinafter, "Discrimination
Charge"].  On August 12, 2011, Cohens received a right-to-sue
letter.  Compl. ¶ 2.

On September 30, 2011, Cohens sued in the Circuit Court for
Baltimore City, Maryland, alleging race and gender discrimi-
nation and retaliation, in violation of the EPA (Count One), the
MEPA (Count Two), Title VII (Count Three), and Title 20 (Count
Four).  ECF No. 2.  On November 28, 2011, the DHR removed the
lawsuit to this Court.  ECF No. 1.[17]  On December 5, 2011, the
DHR moved to dismiss Cohens's retaliation claim, and for summary
judgment on her remaining claims.  ECF No. 6; ECF No. 6-1.  On
December 20, 2011, Cohens opposed the motion.  ECF No. 10.  On
May 11, 2012, this Court granted in part and denied in part the
DHR's motion to dismiss and for summary judgment.  ECF No. 12.[18]

---

[17] The complaint and summons were not served on the DHR until
November 1, 2011.  ECF No. 1 at 1.

[18] The Court dismissed Cohens's Title VII retaliation claim --as
well as any implied retaliation claim under Title 20--for lack
of subject matter jurisdiction, on the grounds that Cohens had
not administratively exhausted that claim.  ECF No. 11 at 10-11
& n.14; ECF No. 12.  The Court denied summary judgment on the

6

On May 24, 2012, Cohens moved for reconsideration of the dismissal of her retaliation claims. ECF No. 15. On June 14, 2012, the DHR opposed the motion for reconsideration. ECF No. 18. On August 8, 2012, Cohens's counsel moved to withdraw. ECF No. 19. On August 9, 2012, this Court granted counsel's motion. ECF No. 20. That day, Cohens indicated she would proceed *pro se.* ECF No. 21.

On August 16, 2012, Cohens moved for summary judgment on her equal pay claims. ECF No. 23; *see* ECF No. 23-1 at 3; *see also infra* note 26. On September 6, 2012, the DHR opposed Cohens's motion and cross moved for summary judgment. ECF No. 27. On September 10, 2012, Cohens opposed the DHR's cross motion and replied in support of her motion for summary judgment. ECF No. 28. On September 17, 2012, the DHR replied. ECF No. 29. On September 25, 2012, Cohens filed a surreply. ECF No. 35.

On September 20, 2012, Cohens moved to amend the memorandum in support of her motion for summary judgment. ECF No. 31. On September 27, 2012, the DHR opposed Cohens's motion to amend. ECF No. 37. On October 4, 2012, Cohens replied. ECF No. 40.

---

remaining claims, in light of Cohens's counsel's unopposed Rule 56(d) affidavit seeking further discovery. ECF No. 11 at 13; ECF No. 12.

II. Analysis

  A. Legal Standards

    1. Motion for Reconsideration

Motions for reconsideration of an interlocutory order are governed by Fed. R. Civ. P. 54(b), under which "any order . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).[19]  Thus, when warranted, a district court retains the power to reconsider and modify its interlocutory judgments at any time before final judgment. *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003).[20]  Resolution of the motion is "committed to the discretion of the district court," *id.* at 515, and "the goal is to reach the correct judgment under law." *Netscape Commc'n Corp. v. ValueClick, Inc.*, 704 F. Supp. 2d 544, 547 (E.D. Va. 2010) (internal citations omitted).

---

[19] *See Mateti v. Activus Fin., LLC*, No. DKC-08-0540, 2009 WL 3633339, at *4 (D. Md. Oct. 27, 2009).

[20] "Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Am. Canoe*, 326 F.3d at 514 (*citing* 11 James Wm. Moore et al., *Moore's Federal Practice* § 56.04[3] (3d ed.) ("Rule 60(b) does not govern relief from interlocutory orders . . . .")); *see also Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991) ("An interlocutory order is subject to reconsideration at any time prior to the entry of a final judgment.").

Although Rule 60(b) applies only to final judgments, a court may consider the reasons in that rule when deciding whether to grant relief under Rule 54(b).[21]  *See Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1470 (4th Cir. 1991); *Mateti*, 2009 WL 3633339, at *4.

2. Motion for Summary Judgment

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[22]  In considering the motion, the judge's function is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A dispute about a material fact is genuine "if the

---

[21] Under Rule 59(e), a motion to alter or amend a final judgment may be granted only "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998).  Under Rule 60(b), a court may grant relief from a judgment or order for: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud or misconduct by the opposing party; (4) voidness; (5) satisfaction; or (6) any other reason that justifies relief.  Fed. R. Civ. P. 60(b).

[22] Rule 56(a), which "carries forward the summary-judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,'" and restored the word "'shall' . . . to express the direction to grant summary judgment."  Fed. R. Civ. P. 56 advisory committee's note.

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant and draw all reasonable inferences in [its] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted).

When cross motions for summary judgment are filed, "each motion must be considered individually, and the facts relevant to each must be reviewed in the light most favorable to the nonmovant." *Mellen*, 327 F.3d at 363 (*citing Rossignol v. Voohaar*, 316 F.3d 516, 523 (4th Cir. 2003)).

B. Cohens's Motion for Reconsideration (ECF No. 15)

Cohens asks the Court to reconsider dismissal of her retaliation claim, on the grounds that "new evidence" shows the claim was administratively exhausted. ECF No. 15. Specifically, Cohens argues that her December 15, 2009 EEOC intake questionnaire, which was not previously submitted to the Court, "includes very detailed information about the parties and claims," exhausting the administrative process as to her

10

retaliation claim.   ECF No. 15-1 at 1-2.   The DHR counters that an intake questionnaire "does not serve as an EEOC charge."   ECF No. 18 at 1; ECF No. 18-1 at 1.

A court's discretion to review an interlocutory order is "not subject to the strict standards applicable to motions for reconsideration of a final judgment,"[23] but is "within the plenary power of the Court . . . to afford such relief . . . as justice requires."[24]   Although Rules 59(e) and 60(b) do not govern reconsideration of an interlocutory order, the Fourth Circuit has suggested that at least parts of those rules may guide a court's analysis.[25]   In considering whether to revise interlocutory decisions, district courts in this Circuit have

---

[23] *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003).

[24] *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1473 (4th Cir. 1991) (internal citation and quotation marks omitted).

[25] *See Fayetteville Investors*, 936 F.2d at 1470, 1472 (declining to "thoroughly express our views on the interplay of Rules 60, 59, and 54" but citing *Gridley v. Cleveland Pneumatic Co.*, 127 F.R.D. 102 (M.D. Pa. 1989), in which Rule 60(b) guided the court's reconsideration of an interlocutory order); *Pritchard v. Wal-Mart Stores, Inc.*, 3 F. App'x 52, 53 (4th Cir. 2001) (per curiam) (citing an earlier case applying Rule 60(b) to hold that a district court did not err in denying a motion to reconsider an interlocutory order); *see also Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F. Supp. 2d 298, 332-39 (D. Md. 2000) (guided by Rules 59(e) and 60(b), court declined to amend interlocutory order because movant had presented no new facts and had failed to show that other cases dictated a different result).

looked to whether movants presented new arguments[26] or evidence,[27] or whether the court has "obviously misapprehended a party's position or the facts or applicable law."[28]

A Title VII plaintiff must first "exhaust her administrative remedies by bringing a charge with the EEOC." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). "The scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents." *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Id.* (internal quotation marks omitted). "[A] failure by the plaintiff to exhaust administrative remedies . . . deprives the federal courts of subject matter jurisdiction over the claim." *Id.* Because Cohens neither checked the "retaliation" box on her

---

[26] *See, e.g., McLaurin v. E. Jordan Iron Works, Inc.*, 666 F. Supp. 2d 590, 596 (E.D.N.C. 2009) ("Generally, motions to reconsider are not appropriate vehicles to advance arguments already rejected by the Court or new legal theories not argued before the ruling.") (internal quotation marks omitted)), *aff'd*, 410 F. App'x 630 (4th Cir. 2011).

[27] *United States v. Duke Energy Corp.*, 218 F.R.D. 468, 474 (M.D.N.C. 2003).

[28] *Duke Energy Corp.*, 218 F.R.D. at 474 (internal quotation marks omitted).

12

EEOC charge nor alleged retaliation in the charge's factual summary, this Court concluded that she failed to exhaust her administrative remedies as to that claim.   ECF No. 11 at 9; *see* Discrimination Charge.

Cohens asserts that reconsideration is warranted in light of her newly submitted intake questionnaire, which *did* check "retaliation" as a basis for her employment discrimination claim.   ECF No. 15-1 at 1; *see* ECF No. 15-2 at 3.   Because Cohens has offered new evidence and arguments, this Court will consider her motion on the merits.   *See McLaurin*, 666 F. Supp. at 596; *Reyazuddin*, 2012 WL 642838, at *3.

"A plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit."   *Mayers v. Wash. Adventist Hosp.*, 131 F. Supp. 2d 743, 747 (D. Md. 2001), *aff'd*, 22 F. App'x 158 (4th Cir. 2001) (per curiam).[29]   In *Middleton v. Motley Rice, LLC*, No. 2:08-3256-CWH, 2010 WL 3167360 (D.S.C. Aug. 9, 2010), *aff'd*, 445 F. App'x 651 (4th Cir. 2011), *cert. denied*, 132 S. Ct. 1755 (2012), the plaintiff objected to a magistrate judge's recommendation that his claim for retaliation

---

[29] *See also Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996) ("The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint."); *Stehle v. Gen. Mills. Rest., Inc.*, 875 F. Supp. 320, 323 (D.S.C. 1994) ("[C]ivil suit under Title VII is limited to discrimination charged in the report to the EEOC or to discrimination actually found by the EEOC upon investigation of the original charge.").

be dismissed for failure to exhaust administrative remedies. *Id.* at *5.  Like Cohens, Middleton's formal EEOC charge did not state a claim for retaliation or check the box next to "retaliation," but his EEOC intake questionnaire did circle "retaliation" as a basis for discrimination.  *Id.* at *5-6.  The magistrate judge stated that this exhibit, standing alone, was insufficient to "save" the retaliation claim:

> First, there was nothing on the exhibit to suggest that it had been submitted to the EEOC (unlike the plaintiff's charge of discrimination which showed a received stamp as well as an EEOC charge number), and second, and if th[e] court were to assume that the document had been received by the EEOC, the narrative contained in the questionnaire did not set forth any claim of protected activity by the plaintiff or of retaliatory action by the defendant.

*Id.* at *6.

The district court adopted the magistrate judge's report. *Middleton*, 2010 WL 3167360, at *7.  Despite that the plaintiff had later offered evidence that the intake questionnaire was filed with the EEOC, the district court explained that the questionnaire could not amend the later-filed EEOC charge, because the two documents "serve different purposes."  *Id.* at *6 (internal quotation marks omitted).  Specifically, whereas an intake questionnaire "facilitates pre-charge filing counseling" and "is not shared with the employer during the pendency of the EEOC investigation," the EEOC charge "serves to define" the scope of the EEOC investigation and to notify the defendant of

the charges against it.  *Id.* (internal quotation marks omitted).

Here, as in *Middleton*--and as this Court previously explained in its opinion dismissing Cohens's retaliation claim-- Cohens's EEOC charge did not set forth any retaliatory conduct by the DHR, nor did it assert a retaliation claim in the section provided.  *See* Discrimination Charge; ECF No. 11 at 10. Further, that Cohens's intake questionnaire circled "retaliation" as a basis for discrimination does not restore this Court's subject matter jurisdiction, for "[t]o treat Intake Questionnaires willy-nilly as charges would be to dispense with the requirement of notification of the prospective defendant." *Park v. Howard Univ.*, 71 F.3d 904, 909 (D.C. Cir. 1995) (internal quotation marks omitted); *see also Middleton*, 2010 WL 3167360, at *6-7.  The Court will affirm its order dismissing Cohens's retaliation claim.

C. Cross Motions for Summary Judgment on the EPA and MEPA Claims (ECF Nos. 23, 27)[30]

The parties have cross moved for summary judgment on Cohens's EPA and MEPA claims (Counts One and Two).[31]  Under the

---

[30] Cohens has filed a surreply in support of her summary judgment motion.  *See* ECF No. 35.  "Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed."  Local Rule 105.2(a) (D. Md. 2011).  Because this Court did not order Cohens to file a surreply, Cohens's will not be considered.

[31] Cohens's motion does not explicitly seek summary judgment on her MEPA claim.  *See generally* ECF No. 23.  However, in her reply and opposition to the DHR's cross motion, Cohens asserts

EPA,

> No employer . . . shall discriminate . . . between
> employees on the basis of sex by paying wages to
> employees . . . at a rate less than the rate at which
> he pays wages to employees of the opposite sex . . .
> for equal work on jobs the performance of which
> requires equal skill, effort, and responsibility, and
> which are performed under similar working conditions,
> except where such payment is made pursuant to (i) a
> seniority system; (ii) a merit system; (iii) a system
> which measures earnings by quantity or quality of
> production; or (iv) a differential based on any other
> factor other than sex.

29 U.S.C. § 206(d)(1).   "[C]ourts have applied the same analysis

in reviewing MEPA and EPA claims," because "[t]he MEPA

essentially mirrors . . . the EPA."[32]   The MEPA provides:

> (a) An employer may not discriminate between employees
> in any occupation by paying a wage to employees of one
> sex at a rate less than the rate paid to employees of
> the opposite sex if both employees work in the same
> establishment and perform work of comparable character
> or work on the same operation, in the same business,
> or of the same type.
> (b) Subsection (a) of this section does not prohibit a
> variation in a wage that is based on:
> (1) a seniority system that does not discriminate on
> the basis of sex;
> (2) a merit increase system that does not discriminate
> on the basis of sex;
> (3) jobs that require different abilities or skills;
> [or]

---

that her motion seeks summary judgment on her EPA and MEPA
claims.   ECF No. 28 at 1.   Because Cohens is *pro se*, the Court
will construe her motion liberally to include this argument.
*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

[32] *Glunt v. GES Exposition Servs., Inc.*, 123 F. Supp. 2d 847,
861-62 (D. Md. 2000).

(4) jobs that require the regular performance of different duties or services[.][33]

1. Cohens's Motion for Summary Judgment (ECF No. 23)[34]

Apparently anticipating a "merit system" defense under the EPA,[35] Cohens asserts that she is entitled to summary judgment on the grounds that the DHR "recklessly, knowingly[,] and willingly" "misused" Maryland's merit system to discriminate

---

[33] Md. Code Ann., Lab. & Empl. § 3-304.

[34] Cohens has moved to amend the memorandum in support of her motion, on the grounds that she "inadvertently" used the DHR's statement of undisputed facts instead of her own. ECF No. 31; see id. at 2. Specifically, Cohens wishes to assert that her male colleagues' duties were "similar" to her duties; the memorandum currently asserts that their duties were "significantly different and more complex." Id. The DHR has opposed the motion, because Fed. R. Civ. P. 15--on which Cohens relied in support of her motion to amend--only applies to pleadings, and because Cohens's motion is "untimely" under that rule and will "prejudice" the DHR. ECF No. 37. This Court has the inherent authority to control its cases and docket to "protect [its] proceedings and judgments in the course of discharging [its] traditional responsibilities." Degen v. United States, 517 U.S. 820, 823 (1996). Here, Cohens has asked for a minor amendment to one paragraph of a 10-page memorandum. See ECF No. 31 at 2. Besides arguing that the pending motions have been fully briefed, the DHR offers no support for its assertion that it will be prejudiced by the amendment. ECF No. 37 at 2. Prejudice seems unlikely because, on cross motions for summary judgment, the parties' evidence--not their bare allegations--is dispositive. Cohens's motion to amend will be granted.

[35] If the plaintiff succeeds in showing a prima facie EPA violation, the burden shifts to the employer to show by a preponderance of the evidence that the payment was made "pursuant to," among other exceptions, a "merit system." 29 U.S.C. § 206(d)(1)(ii); infra.

against her.  ECF No. 23-1 at 3.[36]  She argues that the DHR's
intent to discriminate is "demonstrate[d]" by its "using"
education and skill as a factor for the pay disparity between
male and female trainers.  *Id.* at 4.  The DHR counters that
Cohens's EPA claim is time-barred; Cohens has not established a
prima facie violation of the EPA or MEPA; and, even if Cohens
had established a prima facie case, affirmative defenses
preclude liability.  ECF No. 27 at 1, 7; *see id.* at 9 n.4.

      a. Statute of Limitations

As a general rule, an EPA action must be brought within two
years after the cause of action accrues.  29 U.S.C. § 255(a).[37]
An EPA action accrues each time a discriminatory paycheck is
issued.  *Nealon v. Stone*, 958 F.2d 584, 591 (4th Cir. 1992).
Willful violations of the EPA are subject to a three-year
statute of limitations.  29 U.S.C. § 255(a); *McLaughlin*, 486
U.S. at 135.  In the equal pay context, "willful" is synonymous
with "voluntary," "deliberate," and "intentional."  *McLaughlin*,

---

[36] In support of her argument, Cohens mistakenly cites Title 14
of the Code of Maryland Regulations ("COMAR"), which regulates
independent agencies such as the Veterans Commission.  *E.g.*, ECF
No. 23-1 at 4-7 (citing among other regulations, Md. Code
Regs. 14.27.02.18).  COMAR Title 17 regulates the Department of
Budget and Management, which oversees the State Personnel
Management System (the "SPMS")--the system at issue here.  *See
infra* Part II.C.2.

[37] *See also McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135
(1988); *Brewster v. Barnes,* 788 F.2d 985, 993 (4th Cir. 1986).
By contrast, MEPA claims are subject to a three-year limitations
period.  Md. Code Ann., Lab. & Emp. § 3-307(c).

486 U.S. at 133 (internal quotation marks omitted).  The willfulness standard requires a showing that an employer "either knew or showed reckless disregard for . . . whether its conduct was prohibited by the statute."  *Id.*  Good faith is a defense to willfulness.  *Quirk v. Baltimore County*, 895 F. Supp. 773, 789 (D. Md. 1995).

Here, there is a genuine dispute of material fact about whether Cohens's EPA claim is timely.  Cohens's resignation was effective on September 29, 2009.  Compl. ¶ 12.  In her opposition and reply, Cohens asserts that she "was not paid beyond [that] date."  ECF No. 28 at 4.[38]  Cohens filed this suit on September 30, 2011: one day past the two-year statute of limitations.  ECF No. 2; 29 U.S.C. § 255(a).  Cohens nevertheless seeks to avoid summary judgment by invoking the three-year rule.  ECF No. 28 at 3, 4.  The DHR argues that the three-year rule does not apply here because Cohens has not sufficiently demonstrated that the DHR willfully violated the EPA in paying her male colleagues more.  ECF No. 27 at 7 n.3; ECF No. 29 at 2.  Further, the DHR has offered evidence that Edmondson, Forbes, and Simon were classified at higher grades and steps, and had received degrees in higher education--as well as training--that Cohens had not.  McMahan Decl. at 23 ¶¶ 6-8,

---

[38] Cohens has offered no evidence that a paycheck was *issued* to her after September 29, 2009.

·10; *see also* ECF No. 27 at 37, 45, 53.   *See generally* Cohens Dep. at 62-64.[39]

Because Cohens has not shown that the DHR's conduct was willful, and the DHR has offered evidence to support its argument that it acted in good faith, Cohens's EPA claim is subject to the two-year statute of limitations.   There is insufficient evidence to determine--and thus a dispute of material fact about--whether Cohens was issued a discriminatory paycheck between her resignation date and the date she filed suit.   Summary judgment for Cohens is precluded on this ground.

 b. The Merits

Even if Cohens's EPA claim were timely brought, Cohens has failed to establish that she is entitled to judgment as a matter of law on the merits of her EPA and MEPA claims.

To establish a prima facie case under the EPA or the MEPA, a plaintiff must prove that (1) "her employer has paid different wages to employees of opposite sexes," (2) "said employees hold jobs that require equal skill, effort, and responsibility," and

---

[39] In rebuttal, Cohens asserts that the DHR "intentionally" avoided completing new MS-22 Position Descriptions for her male colleagues, "so that [the DHR] could exercise discrimination and pay the male trainers wages above the conditions of their new duties."   *See* ECF No. 23-1 at 4-5; ECF No. 28 at 5.   Cohens has offered no evidence to support this theory.   *See infra* Part II.C.2.

(3) "such jobs are performed under similar working conditions."[40]

To establish the second, "critical" element, the plaintiff must

show that the jobs in question were "virtually identical."

*Galarraga v. Marriott Emps. Fed. Credit Union*, No. JFM-94-1986,

1996 WL 376408, at *3 (D. Md. Apr. 24, 1996) (internal quotation

marks omitted).  Whether the jobs are virtually identical is

determined through a "factor by factor" comparison between the

female and male employees.  *Id.*  As previously explained,

> The touchstone of the equal work analysis is whether
> the work is substantially equal.  If the jobs to be
> compared have a common core of tasks, i.e.,
> significant portions of the two jobs are identical,
> the inquiry turns on whether the differing or
> additional tasks require greater skill or
> responsibility.  Skill is a function of experience,
> training, education, and ability, and is measured in
> terms of the performance requirements of the job.
> Responsibility measures, among other things, the
> degree of accountability to higher-ups.

*Hassman v. Valley Motors, Inc.*, 790 F. Supp. 564, 567 (D. Md.

1992) (internal citations and quotation marks omitted)).

If the plaintiff succeeds in establishing her prima facie

case, the burden shifts to the employer to show by a

preponderance of the evidence that the salary differential was

justified by one of four statutorily prescribed affirmative

defenses: (1) a seniority system; (2) a merit system; (3) a

---

[40] *Gustin v. W. Va. Univ.*, 63 F. App'x 695, 698 (4th Cir. 2003)
(internal quotation marks omitted) (standard for a prima facie
case under the EPA); *Glunt*, 123 F. Supp. 2d at 861-62; *see also*
*Strag v. Bd. of Tr.*, 55 F.3d 943, 948 (4th Cir. 1995).

system pegging earnings to quantity or quality of production; or (4) any factor other than gender.   29 U.S.C. § 206(d)(1)(i)-(iv); *Diamond v. T. Rowe Price Assocs., Inc.*, 852 F. Supp. 372, 389 (D. Md. 1994).   If the employer carries its burden, the plaintiff's claim must fail as a matter of law unless she can rebut the employer's evidence.  *Galarraga*, 1996 WL 376408, at *3 (*citing Strag*, 55 F.3d at 948).   If the employer does *not* carry its burden, it is liable for sex discrimination in pay.  *Strag*, 55 F.3d at 948; *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 344 (4th Cir. 1994).[41]

Although Cohens has alleged that she was paid less than her male colleagues, her motion does not expressly address the other elements of her prima facie case.  *See generally* ECF No. 23-1. The DHR argues that Cohens has failed to establish a prima facie case because she has not shown that her job required the same "skill, effort, and responsibility" as Edmondson's, Forbes's, and Simon's.  ECF No. 27 at 8-14; *see Gustin*, 63 F. App'x at 698; *see also Galarraga*, 1996 WL 376408, at *3.   In her opposition and reply, Cohens counters that the DHR "has not produced documents supporting the male Trainers' actual work performance, activities[,] and schedules from 2002-2005."   ECF No. 28 at 6.   Cohens further asserts that "[e]ven if the [DHR]

---

[41] "[D]irect evidence of sexual discrimination is not required to counter the contention that a pay disparity is justified." *Fowler*, 978 F.2d at 161.

could prove that the male Trainers were assigned more 'complex' duties . . . the fact that [Cohens] was qualified to work in the same classification as [her male colleagues] would mean that she was qualified to perform the same duties."  *Id.*

According to Edmondson's MS-22 Position Description, Edmondson was an Administrator V, with a working title of "Deputy Director, HRDT-Training Unit."  ECF No. 27 at 37.  In that capacity, Edmondson was tasked with managing the Training Unit in the absence of the Director, and serving as the Primary Instructor, Management Consultant, Vendor Contracting Liaison, and Evaluator of in-house staff training.  *Id.* at 38.  Thirty percent of his time was assigned to planning, organizing, training, supporting, and evaluating staff in the "design, development[,] and delivery" of "all DHR training packages."  *Id.*  Forty percent of his time was assigned to establishing and maintaining "effective working relationships" with management.  *Id.*  Edmondson's position also required supervision of other employees.  *Id.* at 42.

According to Forbes's MS-22 Position Description, Forbes was a Program Manager II, with a working title of "Leadership Development Program Admin., HRDT-Training Unit."  ECF No. 27 at 45.  In that capacity, Forbes was expected to plan and implement the DHR's "Leadership Development Program," and to serve as the Primary Contact Instructor, Management Consultant, Vendor

Contracting Liaison, and Evaluator of training for the
Leadership Development Program. *Id.* at 46.  Like Edmondson, 40%
of Forbes's time was assigned to planning the design and
development of DHR training packages, and 30% was assigned to
maintaining relationships with management. *Id.*  Forbes's
position did not require him to supervise other employees. *Id.*
at 50.

According to Simon's MS-22 Position Description, Simon was
an Administrator II, with a working title of "E-Learning
Coordinator." ECF No. 27 at 53.  In that capacity, Simon was
tasked with providing "e-learning oversight and administration
to all DHR staff." *Id.* at 54.  Sixty-five percent of Simon's
time was assigned to web master duties; 20% was assigned to
managing and administering the e-learning program; 10% was
assigned to using computer languages and "microcomputer command
language tools"; and 5% was reserved for performing "other
related duties," such as participating in HRDT's plan for
Maryland's "E-gov" initiatives. *Id.* at 55.  Simon's position
did not require him to supervise other employees. *Id.* at 58.

This Court will assume, for this analysis, that Cohens's
and her male colleagues' respective positions shared a "common
core of tasks." *Hassman*, 790 F. Supp. at 567.  The question,
then, is whether her male colleagues' additional tasks
"require[d] greater skill or responsibility": skill being a

24

function of experience, and responsibility measuring, among
other things, degree of accountability.  *Id.*  Viewing the facts
in the light most favorable to the DHR, *Mellen*, 327 F.3d at 363,
this Court concludes that there is, at the very least, a genuine
dispute of material fact about this issue.  As Deputy Director,
Edmondson was expected to manage the unit in the Director's
absence.  ECF No. 27 at 38.  Forbes's central role was to plan
and implement the DHR's Leadership Development Program.  *Id.* at
46.  Simon was assigned significant computer-based responsibi-
lities.  *Id.* at 54.  Cohens was not assigned these tasks.  *See,*
*e.g.*, Cohens Dep. at 61 (35:2-10; 36:6-9).  And, unlike the
other HRDT members, Cohens did not have a college degree.  *See*
McMahan Decl. at 23-24 ¶¶ 6-8; Cohens Dep. at 61 (31:14-17,
32:6-9).[42]  Thus, Cohens has not shown that her job required the
same "skill, effort, and responsibility" as Edmondson's,
Forbes's, and Simon's.

---

[42] At her deposition, Cohens testified that she did not "know
anything" about "anyone being a manager of any particular
project," and that she instead "kn[e]w" her male colleagues as
"trainers."  Cohens Dep. at 64 (46:13-21).  Cohens's personal
perception of her colleagues' duties--without any evidence to
support the accuracy of that perception--does not entitle her to
judgment as a matter of law.  The DHR's response to Interroga-
tory No. 14--that the other HRDT employees had duties "similar"
to Cohens's--is relevant but not dispositive, particularly given
the DHR's further assertion that the other employees also had
additional education, skills, training, and experience and were
therefore "assigned [other] work."  *See* ECF No. 28-4 at 1.

Because there is a genuine dispute about the timeliness of Cohens's EPA claim, and because Cohens has failed to establish a prima facie violation of the EPA or the MEPA, her motion for summary judgment will be denied.

2. The DHR's Cross Motion for Summary Judgment (ECF No. 27)

The DHR seeks summary judgment on the grounds that Cohens's EPA claim is time-barred; Cohens "cannot" establish a prima facie violation of the EPA or MEPA; and, even if Cohens had established a prima facie case, it is exempt from the EPA under the "merit system" and "any other factor other than sex" exceptions.  ECF No. 27 at 1, 7, 14-17; *see id.* at 9 n.4. Cohens objects that her claim is timely and argues that the DHR "continues to use education and skill level as a factor for the pay disparity," when in fact these reasons are "a pretext to the [DHR's] discriminatory behavior."  ECF No. 28 at 3.  For purposes of the DHR's motion, this Court will assume that Cohens's EPA claim is timely and that Cohens has established a prima facie case.[43]

As discussed above, assuming that Cohens has established a prima facie violation of the EPA and MEPA, the burden shifts to

_____

[43] Cohens mistakenly asserts that this Court "already established that [she] has successfully argued a prima facie case."  ECF No. 28 at 3.  Contrary to Cohens's belief, this Court denied summary judgment in its earlier opinion solely because Cohens had not yet been able to discover information essential to her opposition.  *See* ECF No. 11 at 13.

the DHR to show by a preponderance of the evidence that the salary differential was justified by: (1) a seniority system; (2) a merit system; (3) a system pegging earnings to quantity or quality of production; or (4) any factor other than gender.  29 U.S.C. § 206(d)(1)(i)-(iv); *Diamond*, 852 F. Supp. at 389.  If the DHR carries this burden, Cohens's claim must fail as a matter of law unless she can rebut the DHR's evidence. *Galarraga,* 1996 WL 376408, at *3 (*citing Strag*, 55 F.3d at 948).

The DHR principally argues that Maryland's "complex personnel management system" "clearly" constitutes a "merit system" exempt from the EPA.  ECF No. 27 at 15.  The Fourth Circuit has defined a "merit system" as "an organized and structured procedure whereby employees are evaluated systematically according to predetermined criteria."  *EEOC v. Aetna Ins. Co.*, 616 F.2d 719, 725 (4th Cir. 1980).

By statute, Maryland's Secretary of Budget and Management (the "Secretary") oversees the SPMS.  Md. Code Ann., State Pers. & Pens. § 6-101.  The SPMS's stated purpose is to provide a system of employment for employees under the Secretary's authority, and it covers all positions in the state government's executive branch.  *Id.* §§ 6-102, 6-302(a).  Among other things, the SPMS (1) "establishes categories of service for employees based on the general nature of the employee's duties or method of appointment"; (2) "groups employees into classes based on

specific duties that employees perform"; (3) "provides a system

of pay for employees"; and (4) "*provides for a system of merit*

*employment* in the skilled service and professional service,

regardless of an applicant's political or religious opinions or

affiliations or of any standard other than business efficiency."

*Id.* §§ 6-102(1)(i), (2), (3) (emphasis added).   Employees are

assessed, in writing, at six-month intervals, based on the

employee's entry-on-duty date.   *Id.* § 7-502.   This organized,

structured system is a merit system for purposes of the EPA.[44]

Cohens appears to concede that the SPMS is a merit system,

but argues that the DHR abused that system to discriminate

against her.   *See, e.g.*, ECF No. 28 at 7-9.   In support, Cohens

asserts that the DHR "intentionally and knowingly violated

regulations" by failing to perform annual evaluations of its

employees--allegedly so that "it would 'appear' that the male

trainers were continuing to perform the same duties of the

previous position and retain their salaries."   *Id.* at 5.

According to Cohens, discovery "revealed" that the MS-22

Position Description form "was not applied properly for one

single trainer in over [five] years."   *Id.*   The DHR counters

that, under the SPMS, MS-22 Position Descriptions need only be

---

[44] *Cf., e.g., Thomas v. United States*, 86 Fed. Cl. 633, 640
(2009) (federal government's General Schedule is a merit
system), *aff'd*, 351 F. App'x 433 (Fed. Cir. 2009); *Lissak v.
United States*, 49 Fed. Cl. 281, 285 (2001) (FAA's "reverse
seniority system" is a merit system).

modified if "needed." *See* Md. Code Ann., State Pers. & Pens. §
7-503(b)(3)(ii).

Under COMAR § 17.04.01.04(A)(1), an appointing authority,
head of a principal unit, and management have the exclusive
authority to reassign employees under the appointing authority's
jurisdiction. According to the Salary Guidelines for the
Standard Pay Plan,[45] the appointing authority "shall assure that
an employee who moves from one position to another position in
the same salary grade or slope scale retains the same salary."
ECF No. 27 at 88. Here, Cohens, Edmondson, Forbes, and Simon
were reassigned from their former DHR positions to HRDT. *See*
McMahan Decl. at 23-24 ¶¶ 6-9. Cohens has offered no evidence
to suggest that these reassignments were a product of
discrimination.[46]

---

[45] There are two pay plans in the SPMS: Standard and Executive.
*See* Md. Code Ann., State Pers. & Pens. § 8-101(a).

[46] In support of her pretext argument, Cohens submitted print-
outs of online job descriptions for Administrator V and Program
Manager II--as well as her male colleagues' MS-22 Position
Descriptions--on which she has hand-written notes disputing
whether Edmondson, Forbes, and Simon actually performed the
duties associated with their respective positions. ECF No. 23-3
at 1, 3, 11, 13, 21; ECF No. 28-6. These handwritten
allegations are inadmissible, and thus insufficient to create a
genuine dispute of material fact. *Mitchell v. Data Gen. Corp.*,
12 F.3d 1310, 1315-16 (4th Cir. 1993) (a plaintiff seeking to
defeat summary judgment must proffer "sufficient proof, in the
form of *admissible evidence*, that could carry the burden of
proof in [her] claim at trial." (emphasis added)). In any
event, it is "widely recognized that an employer may continue to
pay a transferred or reassigned employee his or her previous

Assuming that Cohens's EPA claim is not time-barred, and that she has established a prima facie case under the EPA and MEPA, she has failed to rebut the DHR's affirmative defense under those statutes.  The DHR's motion for summary judgment will be granted.[47]

III. Conclusion

For the reasons stated above, Cohens's motion for reconsideration will be granted in part and denied in part; Cohens's motion to amend will be granted; Cohens's motion for summary judgment will be denied; and the DHR's cross motion for summary judgment will be granted.

_3/19/13_
Date

_____
William D. Quarles, Jr.
United States District Judge

---

higher wage without violating the EPA, even though the current work may not justify the higher wage."  *Glunt*, 123 F. Supp. 2d at 847.

[47] As discussed above, the DHR is also entitled to summary judgment because it has shown that the salary differential was based on factors other than sex, namely, the male colleagues' different educational backgrounds, training, and skills.  *See supra* Part II.C.1(b).